**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-2178

———————

WILLIAM GROVE, SR.; VIRGINIA B. GROVE;
SANDRA PALMIERI; MICHAEL G. FUHRMAN;
WILLIAM WINTER; PRESTON HIMES; EDWARD MYERS;
FLOYD MITZEL; MAURICE KEFAUVER, III; HAROLD G. LUCKENBAUGH;
WILLIAM C. BARRETT; LARRY LEHMAN; GERALD A. YOUNG;
JOHN C. DOUGLASS; INTERNATIONAL UNION UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,
Appellants

v.

JOHNSON CONTROLS, INC.; JOHNSON CONTROLS, INC.
UNION RETIREE WELFARE PLAN (PLAN 570); JOHNSON CONTROLS, INC.
UNION WELFARE PLAN (PLAN 565); DOES 1 through 20

————————————————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-12-cv-02622)
District Judge: Honorable Sylvia H. Rambo

————————————————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on Tuesday, June 13, 2017

Before: JORDAN and KRAUSE, *Circuit Judges*, and STEARNS, *District Judge*.[*]

(Opinion filed: June 15, 2017)

———————

[*] The Honorable Richard G. Stearns, United States District Judge for the District
of Massachusetts, sitting by designation.

OPINION[**]

KRAUSE, *Circuit Judge.*

Before this Court is an appeal from the District Court's grant of summary judgment in favor of Appellee Johnson Controls, Inc., on claims that Johnson Controls violated the Labor Management Relations Act and owes Appellants health insurance benefits under the Employee Retirement Income Security Act. For the reasons that follow, we will affirm.

## I.    Background

Appellants in this case are retired Johnson Controls employees with retirement dates dating back to 1977,[1] and they are joined by their former union, the International Union United Automobile, Aerospace and Agricultural Implement Workers of America ("the Union"). While working for Johnson Controls, Appellants were subject to and received the benefits of the Union's collective bargaining agreements, which the Union,

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] To be exact, some Appellants worked for Johnson Controls' predecessor companies, but Johnson Controls is now the plan sponsor and fiduciary with respect to the health insurance benefit plans at issue in this case, so we treat all Appellants as Johnson Controls' former employees. For purposes of this appeal, we refer to Appellees collectively as "Johnson Controls," recognizing that Johnson Controls' welfare plans and unnamed affiliated individuals are also Appellees in this case.

on their behalf, had negotiated with Johnson Controls every few years since 1973. Each of these agreements had a "Duration and Termination" clause specifying the agreement's expiration date. *See, e.g.*, J.A. 987-88.

Beginning in 1975, each collective bargaining agreement also addressed health insurance benefits for both active and retired Johnson Controls employees through a separate Group Insurance Program booklet, which was incorporated into the agreement by reference and was expressly made subject to "all provisions of [the] Agreement." *See, e.g.*, J.A. 1110. The Group Insurance Program booklets issued between 1975 and 2006 imposed no lifetime cap on overall benefits payable, and the booklet issued in 2006 imposed a $500,000 lifetime cap.

Things changed in late 2009, when, as the 2006 collective bargaining agreement was expiring, Johnson Controls informed Appellants that, effective January 1, 2010, and with respect to services and prescriptions on or after that date, it would cap health insurance benefits at $50,000 for all Appellants over age sixty-five. Appellants who reached the $50,000 lifetime limit on post-2009 benefits still remained eligible, however, for government-provided health insurance benefits through Medicare, which Johnson Controls specified would not count toward the cap on post-2009 benefits.

In response, Appellants and the Union sued Johnson Controls, claiming that the new cap violated contracts between a union and an employer under the Labor Management Relations Act, 29 U.S.C. § 185, and seeking to enforce their rights under a benefit plan pursuant to the Employee Retirement Income Security Act ("ERISA"),

3

29 U.S.C. § 1132(a)(1)(B).[2]  Appellants moved for class certification, and the District Court certified a class of retirees divided into six subclasses, A through F, based on the years in which the subclass members retired and the collective bargaining agreements applicable to those members.  After discovery, the District Court carefully analyzed the issues relevant to each subclass and issued a thorough and thoughtful decision, granting summary judgment to Johnson Controls on the ground that Appellants and the Union could not establish by a preponderance of the evidence that Johnson Controls intended for Appellants' employee health insurance benefits to vest, i.e., to be guaranteed for the rest of a beneficiary's lifetime, and thus no unlawful conduct had occurred.  This appeal followed.

## II.    Standard of Review[3]

We review the District Court's grant of summary judgment de novo.  *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015).  Summary judgment is appropriate where the moving party has established that "there is no genuine dispute as to any material fact" and, viewing the facts in the light most favorable to the non-moving party, "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006).

---

[2] Although the retirees and the Union also claimed breach of fiduciary duty under ERISA §§ 404 and 502(a)(3), 29 U.S.C. §§ 1104, 1132(a)(3), they later withdrew that claim, and thus it is not before us on appeal.

[3] The District Court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185(c) and 1132(e).  We have jurisdiction pursuant to 28 U.S.C. § 1291.

### III. Discussion

On appeal, Appellants challenge the District Court's conclusion that Appellants could not establish vesting, contending (1) that our Court's previous test for whether health insurance benefits have vested, which the District Court applied in its opinion, did not survive the Supreme Court's recent decision in *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015); (2) that language in the Group Insurance Program booklets showed Johnson Controls intended Appellants' health insurance benefits to vest; and (3) that the District Court erred in its assessment of Appellants' extrinsic evidence. We address each of Appellants' arguments below.

#### 1. Applicable Standard

Health insurance benefits under ERISA do not automatically vest, and, nearly two decades ago, we wrote in *UAW v. Skinner Engine Co.* that any commitment for health insurance benefits to vest must "be stated in clear and express language." 188 F.3d 130, 139 (3d Cir. 1999). Appellants argue that, to the extent *Skinner*'s "clear and express language" requirement differs from traditional rules of contractual interpretation, *Skinner* was overruled by the Supreme Court's 2015 decision in *Tackett*, which focused on the application of "ordinary principles of contract law" to evaluate whether benefits had vested, *see* 135 S. Ct. at 930, 933, 937, and where a plurality of the Court in concurrence explicitly rejected a "'clear and express' language" requirement for vesting, *see id.* at 938 (Ginsburg, J., concurring).

Reading *Skinner* carefully, it is arguably consistent with, rather than at odds with, *Tackett*. As the District Court observed, even while concluding that the "clear and express language" requirement remains binding in this Circuit, *Skinner* in fact "relied on traditional rules of contract construction" to determine the meaning of a collective bargaining agreement, and, moreover, this Court has not applied the "clear and express" language requirement "as a bright-line rule that would suspend all discussion of traditional principles of contract interpretation." *Grove v. Johnson Controls, Inc.*, 176 F. Supp. 3d 455, 470-71 (M.D. Pa. 2016). The District Court's observations appear well founded. Indeed, in *Skinner*, we expressly stated that "traditional rules of contract construction apply when not inconsistent with federal labor law" and, thus, that "[w]here the contract is clear and unambiguous, a court must determine its meaning as a matter of law." *Skinner*, 188 F.3d at 138.

Nonetheless, we need not resolve today whether *Skinner*'s "clear and express language" requirement is distinct from the application of "ordinary principles of contract law," *Tackett*, 135 S. Ct. at 930 (majority opinion), or, if it is, whether it survives *Tackett*. In this case, even applying "ordinary principles of contract law," *id.*, we conclude, for the reasons discussed below, that the District Court correctly determined that the benefits in question were guaranteed only for the duration of the relevant collective bargaining agreement.

## 2. Contractual Language

We begin with the "rule that contractual provisions ordinarily should be enforced as written," which "is especially appropriate when enforcing an ERISA welfare benefits plan." *Id.* at 933 (brackets and internal quotation marks omitted). Because of the differences between the various collective bargaining agreements and Group Insurance Program booklets in this case, we analyze subclass A separately from subclasses B though F.

*Subclass A.* Appellants in subclass A retired between 1977 and 1984, and were subject to the 1975, 1978, and 1981 collective bargaining agreements and Group Insurance Program booklets. The applicable booklets provided that, in retirement, Appellants in subclass A would "continue to be insured," J.A. 1029-30, 1165, or would "have [their] benefits . . . continued," J.A. 1316. Appellants contend this language at least creates ambiguity as to whether the parties intended health insurance benefits for Appellants in subclass A to vest.

We disagree with this contention, for the application of ordinary rules of contract interpretation removes any ambiguity as to vesting. The booklets containing the phrases in question were incorporated into collective bargaining agreements, and those agreements, of course, included durational clauses with exact expiration dates. We must accordingly read the phrases about "contin[uing]" benefits in combination with the collective bargaining agreements "as a harmonious whole," *Engelhard Corp. v. NLRB*, 437 F.3d 374, 381 (3d Cir. 2006); *accord* 11 Richard A. Lord & Samuel Williston,

*Williston on Contracts* § 32:5 (4th ed. 1993 & Supp. 2017), and we must adhere to "the traditional principle that contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement," *Tackett*, 135 S. Ct. at 937 (internal quotation marks omitted); *see Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 207 (1991). These principles compel us to hold that the subclass A members' benefits did not vest and that any obligations on Johnson Controls' part terminated with the expiration of the collective bargaining agreements, for "the specific" clause regarding the agreements' termination dates "controls the general" clause regarding continuation of benefits. *In re Cendant Corp. Sec. Litig.*, 454 F.3d 235, 246 (3d Cir. 2006); *accord* 11 Lord & Williston, *supra*, §§ 32:10, 32:15. We conclude, therefore, that the District Court correctly interpreted "continue" and "continued" to be effective only "until the applicable [collective bargaining agreement] expires" for Appellants in subclass A, *Grove*, 176 F. Supp. 3d at 473, and that the phrases about "contin[uing]" benefits do not create ambiguity as to whether the parties intended benefits to vest.[4]

*Subclasses B Through F*. The Group Insurance Program booklets for subclasses B through F had different language, providing that coverage would be continued "until [an Appellant's] death," J.A. 1442, 1607, 1764, 1912, 2125, 2335, 2505, or that coverage

---

[4] We are not insensitive to the frustration that the Appellants must feel in being told that, while the booklets they were given to describe their benefits said something they may have thought amounted to a promise of unalterable benefits, elsewhere, in a thicket of legal language in the collective bargaining agreements, the meaning actually conveyed in the booklets became something different. But we are not free to disregard our own precedent, which requires us to look to the contract as a whole, not particular phrases in isolation. *See Engelhard Corp.*, 437 F.3d at 381.

would end "on the date of [an Appellant's] death," J.A. 2694. Appellants contend that this language is durational in nature and should therefore supersede any durational provisions in the collective bargaining agreements. Their contention has two flaws: first, even when read in isolation from the collective bargaining agreements' durational provisions and the Group Insurance Program booklets' reservation of rights provisions, the phrases referring to a retiree's "death" are not necessarily durational in nature; second, when read in parallel with other provisions, those phrases do not supersede Johnson Controls' ability to "adopt, modify, or terminate" Appellants' health insurance benefits, *Tackett*, 135 S. Ct. at 933 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)).

We first consider the phrases at issue in their immediate context. Even considering the phrases "until . . . death" or "on the date of . . . death" alone, it is not clear that these phrases are durational in nature, for they reasonably may be interpreted simply as eligibility provisions, indicating the period of time during which an Appellant is eligible for retiree health insurance benefits. Read this way, they merely provide that an Appellant is eligible to receive benefits "until . . . death" during the term of the collective bargaining agreement, but is no longer eligible for benefits if he dies before the collective bargaining agreement expires.

The eligibility-based interpretation of the phrases "until . . . death" and "on the date of . . . death" is made more reasonable when read in context with the provisions immediately after them. Those provisions apply to an Appellant's dependents, use

9

similar language, and are clearly eligibility provisions: during an Appellant's life, his dependents' health insurance benefits will continue until the dependents no longer qualify as "eligible" dependents; after an Appellant's death, his spouse will remain "eligible" until "the earlier of death or remarriage," and his children will remain "eligible" until his spouse is no longer eligible or the children are no longer eligible, "whichever is earlier." J.A. 1442, 1607-08, 1764, 1912, 2125-26, 2335, 2505; *accord* J.A. 2694. At a minimum, these provisions indicate that the phrases referring to an Appellant's "death" are not necessarily durational in nature.

We next consider the phrases "until . . . death" and "on the date of . . . death" alongside the collective bargaining agreements' overall durational provisions and the Group Insurance Program booklets' reservation of rights provisions. It becomes clear, in view of the "whole" of the parties' agreements, 11 Lord & Williston, *supra*, § 32:5, that the parties did not intend the phrases referring to an Appellant's "death" to constitute definitive statements of duration. As with the durational clauses in the collective bargaining agreements for subclass A, the durational clauses in the agreements for subclasses B through F set an exact expiration date on an Appellant's benefits, and, thus, the phrases about an Appellant's "death" serve only to specify that no further benefits are available if an Appellant dies before the agreement expires. This conclusion accords with the Seventh Circuit's reasoning in *Cherry v. Auburn Gear, Inc.*, which held that similar language referred only "to the eligibility of individuals to receive benefits under the agreement, not to the duration of the agreement," 441 F.3d 476, 483 (7th Cir. 2006)

(emphasis omitted), and with the Eighth Circuit's decision in *Crown Cork & Seal Co. v. International Association of Machinists and Aerospace Workers*, which held that a clause providing for "coverage continu[ing] until . . . death" did not constitute "explicit vesting language," 501 F.3d 912, 918 (8th Cir. 2007).

There is more. Appellants in subclasses B and F were subject to clauses expressly reserving Johnson Controls' "right to modify, amend, suspend or terminate [the Group Insurance Programs] at any time," J.A. 1476, 1636, 1785, 1933, or to "amend or terminate the benefits program or any portion of it at any time," J.A. 2618. We have held that such "broad and unequivocal" reservation of rights clauses require us to resolve the vesting analysis in the company's favor, and thus here, even if we assume the phrases referring to an Appellant's "death" are durational in nature, the collective bargaining agreements' "reservation of rights clause[s] overc[o]me . . . the promise of lifetime benefits."[5] *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 903-04 & n.11 (3d Cir. 1995). Although Appellants in subclasses C, D, and E did not have such explicit reservation of rights clauses in their Group Insurance Program booklets, even those Appellants' booklets included provisions discussing what would happen "[w]hen [their] group coverage terminates," i.e., indicating that Johnson Controls retained the

---

[5] Appellants argue that these reservation of rights clauses were never negotiated or agreed to, but when contractual language is clear and unambiguous, as these clauses are here, it is inappropriate to resort to extrinsic evidence to create an ambiguity where none exists. *See Skinner*, 188 F.3d at 145-46. After all, the contractual language reserving Johnson Controls' right to modify the plans appeared in the Group Insurance Program booklets for decades, and the Union has never previously objected by grievance or lawsuit.

right to terminate their plans.  J.A. 2125, 2335, 2505.  In sum, with the whole of the parties' agreements in the background, we conclude that the phrases referring to an Appellant's "death" were intended to provide coverage for eligible retirees during the term of each collective bargaining agreement, not to vest lifetime benefits.[6]

After applying "ordinary principles of contract law" to the collective bargaining agreements and Group Insurance Program booklets in question, *Tackett*, 135 S. Ct. at 930, we conclude as to all subclasses that the contractual language shows the parties did not intend Appellants' health insurance benefits to vest.

### 3.      Extrinsic Evidence

We need only address Appellants' arguments about extrinsic evidence briefly. Even if phrases signaling "contin[uing]" benefits or referring to an Appellant's "death" create ambiguity as to whether the parties intended Appellants' health insurance benefits

---

[6] In arguing that the phrases referring to an Appellant's "death" show an intent to vest, Appellants point to language in *Skinner*, where we noted, by way of contrast to the provisions presented there, that the collective bargaining agreements in *Skinner* did not "state that retiree benefits 'will continue for the life of the retiree,' or that they 'shall remain unalterable for the life of the retiree.'"  188 F.3d at 141.  But our reference to such hypothetical language in the body of a collective bargaining agreement has little bearing on the facts of this case, which involve separate booklets containing the language on which Appellants rely, and where the booklets are incorporated into collective bargaining agreements that do not indicate that health insurance benefits will be of unlimited duration.  Indeed, as discussed above, each collective bargaining agreement in question contained express language subjecting the Group Insurance Program booklets to the provisions of the agreement and, thus, to the agreement's expiration date.  And, of course, in our reference in *Skinner* to hypothetical language in a collective bargaining agreement, we had no occasion to construe any contract as a "whole," 11 Lord & Williston, *supra*, § 32:5, or to consider interrelated provisions, such as those present here, that indicate the parties' intent to limit benefits to the term of the collective bargaining agreement.

12

to vest, the extrinsic evidence conclusively demonstrates that vesting was not intended. Indeed, Appellant's strongest extrinsic evidence, the deposition testimony regarding the 2000 and 2003 collective bargaining agreements, serves only to undermine Appellants' position, as it indicates that the parties did not discuss the Group Insurance Program booklets "in any kind of detail," J.A. 2932, and, accordingly, that the Johnson Controls negotiators were unsure whether Appellants' benefits were contractually protected. And where testimony and accompanying documents refer to "just how significant retaining a Lifetime Medical Plan is," J.A. 767, or to lifetime health insurance benefits as the Union's "holy grail," J.A. 756, those references again cut against Appellants, highlighting a Johnson Controls negotiator's perception that the benefits were negotiable, could be terminated, and thus were not guaranteed for life. In short, the District Court rightly concluded that the extrinsic evidence in this case does not change the conclusion, rooted in the contractual language, that Appellants' benefits had not vested.[7]

---

[7] Although Appellants challenge the District Court's treatment of extrinsic evidence on two additional grounds, neither has merit. First, they contend that the District Court erred as a matter of law by stating that a Johnson Controls negotiator could not "competently testify as to the Company's intent." *Grove*, 176 F. Supp. 3d at 474. But the District Court's opinion simply stated that the negotiator's testimony did not "equate to an intention on the part of [Johnson Controls] to create an unalterable vested right to benefits," *id.* at 474, and thus, contrary to Appellants' contention, the District Court did not make a competency finding or otherwise "dismiss[] . . . all [of the negotiator's] other . . . testimony," Appellants' Br. 57-58.

Second, Appellants assert the District Court did not view the evidence in the light most favorable to them and thereby contravened its obligations on summary judgment. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). However, given that the extrinsic evidence shows Johnson Controls' understanding that it could—or, at least, was willing to—terminate Appellants' health insurance benefits, and in view of the contractual

**IV. Conclusion**

For the foregoing reasons, Johnson Controls was entitled to summary judgment and we will affirm the judgment of the District Court.

---

language that fails to support vesting in this case, summary judgment was warranted even viewing the evidence in the light most favorable to Appellants, as we do here.