NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3092
_____

WILLIAM J. EINHORN, Administrator of the Teamsters Pension
Trust Fund of Philadelphia and Vicinity

v.

PENN JERSEY BUILDING MATERIALS, INC.;
AGATE CONSTRUCTION CO., INC.;
TUCKAHOE SAND & GRAVEL CO., INC.; EASTERN TRANSIT MIX;
JOHNSTON ENTERPRISES, INC.; DIAL BLOCK, INC.; JOHNSTON REALTY;
ELJ REALTY; JAMES E. JOHNSTON, JR.;


PENN JERSEY BUILDING MATERIALS, INC., Third Party Plaintiff

v.

TEAMSTERS LOCAL UNION NO 676, Third Party Defendant


Penn Jersey Building Materials, Inc.,
                                          Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 1-12-cv-06891)
District Judge: Honorable Joseph H. Rodriguez

Submitted Under Third Circuit L.A.R. 34.1(a)
May 25, 2018

BEFORE:  MCKEE, SHWARTZ, and NYGAARD, *Circuit Judges*

(Filed: June 25, 2018)

_____

OPINION[*]

_____

NYGAARD, *Circuit Judge.*

In *M & G Polymers USA, LLC v. Tackett*, the Supreme Court invalidated the Sixth Circuit's so-called *Yard-Man* inference, instructing that ordinary and traditional principles of contract interpretation are to apply to collective-bargaining agreements.[1] Appellant Penn Jersey Building Materials, Inc. argues that the District Court misapplied *Tackett* when determining that a section of the parties' collective bargaining agreement did not absolve Penn Jersey from withdrawal liability. After a thorough review of the briefing and the record, we conclude that the District Court correctly granted summary judgment to the Teamsters Local 676 and correctly denied summary judgment to Penn Jersey. We will affirm.

I.

We will dispense with the usual recitation of the full factual background and procedural history of this matter, as both are well-known to the parties and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] ⸺ U.S. ⸺, 135 S.Ct. 926, 930, 935 (2015). *See also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 140 (3d Cir. 1999). The "*Yard-Man* Inference" comes from *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Yard-Man, Inc.,* 716 F.2d 1476 (6th Cir. 1983).

comprehensively set forth in the District Court's memorandum.[2] Briefly then, Penn Jersey and Teamsters Local 676 had a lengthy history of collective bargaining. This case arose from a CBA between the parties in effect from April of 2005 until April of 2008. Language governing liability should one party withdraw from the Teamster's Pension Trust Fund was a focal point of negotiation. Ultimately, the parties agreed to resolve this point by adopting a provision that was already a part of another CBA—which we (and the parties) refer to as Section 7. This provision stated that the CBA was executed "based upon the understanding that there is no unfounded (sic) pension liability with regard to the 'Red Circle' Pension Fund. Therefore, should the Employer withdraw from the Agreement in the future, there will be no withdrawal liability." By its own terms, the CBA expired in April of 2008. Penn Jersey stopped making payments to the pension fund that same year. The Fund later notified Penn Jersey that the company had incurred withdrawal liability amounting to $961,281.59—more than half of which had accrued after Penn Jersey withdrew from the Fund.

The Fund sued Penn Jersey in the District Court, claiming the company was responsible for the withdrawal liability amount. Penn Jersey filed a third-party complaint against Local 676. It argued that Section 7 of the CBA absolved the company from making payments to the Fund and that, under the terms of that provision, the responsibility for doing so shifted to the Local. The company maintained that Section 7 remained operational even after the expiration of the CBA, giving Penn Jersey perpetual protection from any withdrawal liability. Both the Local and Penn Jersey filed motions

---

[2] For this same reason, we will also dispense with citations to the record in this opinion.

3

for summary judgment.  The District Court granted summary judgment to Local 676 on

Penn Jersey's third-party complaint and denied summary judgment to Penn Jersey.  Penn

Jersey has appealed the entry of summary judgment against it on its third-party

complaint.  We will affirm.[3]

II.

Penn Jersey takes issue with several aspects of the District Court's decision.  The

company tells us we should reverse the District Court's decision because the court

erroneously relied on *Tackett, supra.*  We will deal with this issue first.  Penn Jersey

contends that *Tackett* is inapplicable because that decision's instruction to use traditional

principles of contract interpretation when reviewing collective bargaining agreements

only applies when a court is deciding whether a contract provides for lifetime welfare

benefits and does not apply generally to disputes of contract interpretation.  This

argument is peculiar because that is exactly what the Supreme Court instructed in

*Tackett*: ordinary principles of contract interpretation should apply generally to

collective-bargaining agreements.[4]  The nature of the contract provision under review is

not relevant.[5]  *Tackett's* holding is neither controversial nor surprising in this Circuit

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.  We have jurisdiction to decide this appeal pursuant to 28 U.S.C. § 1291.  Our review of a grant of summary judgment is plenary.  *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 665 (3d Cir. 2016).  Summary judgment is appropriate if there are no genuine disputes of material fact and if the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In reviewing a summary judgment ruling, we view the facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 248-49.

[4] 135 S.Ct. at 933.

[5] *Id.*

4

where we have long held that ordinary contract principles are to be used by courts when reviewing and interpreting collective bargaining agreements.[6]

One traditional principle of contract interpretation is that "contractual obligations will cease, in the ordinary course, upon termination of the contract."[7] The Supreme Court noted that "an expired bargaining agreement has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied."[8] The Court of Appeals for the Sixth Circuit has explained, "[a]bsent a longer time limit in the context of a specific provision, the general durational clause supplies a final phrase to every term in the CBA: 'until this agreement ends.'"[9] Here, Section 20.1 of the CBA specifically states it was in effect from April 1, 2005 until April 30, 2008. The CBA does not contain a "survival" clause—a provision which explicitly indicates which duties or obligations will continue beyond the life of a

---

[6] *See, e.g., UAW v. Skinner Engine Co*., 188 F.3d 130, 139 (3d Cir. 1999). As our colleague Judge Krause recently noted in another unpublished decision, our jurisprudence is "arguably consistent with, rather than at odds with, *Tackett*." *Grove v. Johnson Controls, Inc*., 694 Fed. Appx. 864, 867 (3d Cir. 2017) (quoting *Skinner*, 188 F.3d at 138). Indeed, we expressly stated in *Skinner* that "traditional rules of contract construction apply [to interpretations of collective bargaining agreements] when not inconsistent with federal labor law." *Skinner*, 188 F.3d at 138.

[7] *Tackett*, 135 S.Ct. at 937 (quoting *Litton Fin. Printing Div., a Div. of Litton Bus. Sys. Inc. v. NLRB*, 501 U.S. 190, 207 (1991) (internal quotation marks omitted).

[8] *Litton*, 501 U.S. at 206.

[9] *Gallo v. Moen Inc*., 813 F.3d 265, 269 (6th Cir. 2016) (citing *Litton*, 501 U.S. at 207). Applying *Tackett*, the Court of Appeals for the Sixth Circuit additionally noted that "[if *Tackett*] tells us anything, however, it is that the use of the future tense without more— without words committing to retain the benefit for life—does not guarantee lifetime benefits." *Id*. at 721 (citing *Tackett*, 135 S.Ct. at 937).

contract, and how long those obligations or duties are to endure.[10] Section 7 is likewise silent on whether its duties and obligations are to continue past the life of the agreement, and given the lack of any explicit language in that section or anywhere else in the agreement, Section 7 is controlled by the CBA's general durational clause and expired when the CBA did in 2008.[11]

Penn Jersey stopped making contributions to the Fund in January of 2008. The record reveals that no withdrawal penalty was assessed from that time until the CBA expired in April of that year. Penn Jersey withdrew from the Fund in 2009, meaning that any withdrawal liability assessed against the company was done well after the CBA had expired. Penn Jersey argues that Section 7 remains vibrant because, to hold otherwise, is to render that provision unnecessary. Not so. Here, we agree with the District Court that this provision was relevant and had significance to the parties during the life of the CBA.

A reference to the "future" in Section 7 does not connote perpetuity. As the Court in *Gallo* noted, "[if *Tackett*] tells us anything, however, it is that the use of the future tense without more—without words committing to retain the benefit for life—does not guarantee lifetime benefits."[12] Here, given the absence of such express language, Section

---

[10] *See e.g., United Steelworkers of America, AFL-CIO v. American Smelting and Refining Co.*, 648 F.2d 863, 878 (3d Cir. 1981); *AAMCO Transmissions, Inc. v. Romano*, 42 F.Supp.3d 700, 707 (E.D. Pa. 2014).

[11] *See* 20 Richard A. Lord, Williston on Contracts § 55:27 (4th ed.) ("[R]ights under a collective bargaining agreement that are not vested or accrued are strictly creatures of the agreement, and do not extend beyond the expiration of the contract."); *see also Cincinnati Typographical Union No. 3, Local 14519 v. Gannett Satellite Info. Network, Inc.*, 17 F.3d 906, 910-11 (6th Cir. 1994).

[12] *Gallo*, 813 F.3d at 271 (citing *Tackett*, 135 S.Ct. at 937).

7 does not survive the expiration of the CBA.  Nor does this reference to the "future" create a survivability clause.[13]

Penn Jersey claims that Section 7 is ambiguous because this language—"should the Employer withdraw from the Agreement in the future there will be no withdraw[al] liability"—can be interpreted as extending liability beyond the life of the agreement. Otherwise, they argue, Section 7 is unnecessary.  The District Court rejected this argument, as do we.  This provision was operational during the term of the CBA and, indeed, operated to Penn Jersey's benefit from January of 2008 until the CBA expired in April of that same year.  This provision was neither unnecessary nor meaningless if construed not to survive the CBA because it had significance during the life of the agreement.[14]

Nor has there been a breach of the agreement, as Penn Jersey contends.  Penn Jersey maintains that Section 7 of the CBA first contains a promise that the Union not assess withdrawal liability against the company, and second, that the Union would indemnify Penn Jersey for any future assessment of withdrawal penalties.  We disagree. Section 7 does not obligate the Union such that its failure to do something could constitute a breach.  The provision contains no language evidencing an agreement by the Union to prevent or protect Penn Jersey from withdrawal liability should the company step away from the CBA.

---

[13] *See, e.g., Skinner*, 188 F.3d at 141.
[14] *See Tackett*, 135 S.Ct. at 936.

Finally, we reject any reading of Section 7 that requires the Union to indemnify Penn Jersey's withdrawal liability. An agreement for one party to indemnify another is an extraordinary obligation.[15] As such, language outlining this extraordinary obligation should be specifically and expressly stated in the CBA.[16] No language in Section 7 comes close to expressing any such obligation. Therefore, we will neither find nor infer any indemnification obligation.

## III.

Hence, we conclude the District Court correctly granted summary judgment to Local 676 and correctly denied summary judgment to Penn Jersey. We will affirm.

---

[15] *Jacob Constructors, Inc. v. NPS Energy Services, Inc.,* 264 F.3d 365, 372 (3d Cir. 2001) (citations omitted).

[16] *Id.*